UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY T. R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 22 C 4311 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Anthony T. R. seeks review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Anthony requests reversal and remand of the ALJ's decision. The Commissioner moves for summary judgment, seeking an order affirming the decision. Because substantial evidence does not support the ALJ's determination, the Court reverses and remands.

## I. BACKGROUND

Anthony applied for SSI in December 2019, at age 33, alleging disability beginning on May 1, 2019. He suffers from multiple sclerosis and bipolar disorder. Anthony has a bachelor's degree in computer science from the University of Illinois, College of Engineering, but he has no past relevant work.

The administrative law judge ("ALJ") issued a written decision on October 26, 2021, denying Anthony's application. (R. 64-81). The ALJ concluded that Anthony's bipolar/depression and multiple sclerosis were severe impairments but did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 67-70). Under the "paragraph B" analysis,

the ALJ found that Anthony had no limitations in understanding, remembering, or applying information, moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing oneself. *Id*. at 68-69. The ALJ then determined that Anthony had the residual functional capacity ("RFC") to perform a reduced range of sedentary work except he: (1) cannot climb ladders, ropes, or scaffolds; (2) can occasionally climb ramps and stairs; (3) can occasionally stoop, kneel, crouch, and crawl; (4) can bilaterally handle and finger frequently; (5) should work in an indoor, temperature-controlled work environment; (6) should avoid extreme temperatures and hazards, such as unprotected heights and moving dangerous machinery, as well as vibrations, such as vibrating work surfaces and tools; (7) should avoid work on wet or slippery surfaces; (8) can learn, understand, remember, and carry out simple work instructions; (9) can make simple work-related decisions; (10) can work occasionally with the general public and with coworkers, with no teamwork or tandem work; (11) can tolerate a routine work environment with no more than occasional changes in the work; and (12) can sustain attention and concentration required to sustain work activities in two-hour increments throughout the typical workday. *Id*. at 70. Given this RFC, the ALJ concluded that Anthony was not disabled because he is capable of performing a significant number of jobs in the national economy, such as document preparer, circuit board assembler, and assembler. *Id.* at 80-81.

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently

2

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Anthony argues that the ALJ's decision should be reversed and remanded for several reasons. First, he contends that the ALJ erred in evaluating the medical opinions of Advanced Practice Nurses ("APN") Megan Tress and Kimberly Finnegan. Second, Anthony argues that the ALJ's physical and mental RFC determinations are not supported by substantial evidence.

3

Third, Anthony argues that the ALJ improperly discounted his subjective symptom allegations. The Court finds that remand is necessary because the ALJ failed to explain how her mental RFC assessment is supported by substantial evidence in the record. Because the Court remands on this basis, it does not address Anthony's remaining arguments.

Turning to his successful argument, Anthony faults the ALJ for failing to provide a supported explanation for the specific mental restrictions in the RFC. RFC is the "maximum work that someone seeking benefits can sustain doing in light of their impairments." *Poole v. Kijakazi*, 28 F.4th 792, 794 (7th Cir. 2022). Social Security Ruling 96-8p requires the ALJ's RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "An ALJ's failure to comply with SSR 96-8p's requirements is sufficient basis, by itself, for [the court] to reverse an ALJ's decision." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022). However, a reviewing court "may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if [it is] satisfied that the ALJ 'buil[t] an accurate and logical bridge from the evidence to her conclusion.'" *Id.* (quoting *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018)).

Here, at Step 3, the ALJ found Anthony had no limitation in understanding, remembering or applying information, moderate limitation in interacting with others, moderate limitation in concentrating, persisting, or maintaining pace, and mild limitation in adapting of managing oneself. (R. 68-69). The ALJ determined that these paragraph B criteria limitations required several mental RFC restrictions. In particular, the ALJ found Anthony was limited to simple work instructions and work-related decisions, occasional interaction with the public and

4

coworkers, a routine work environment with no more than occasional changes in the work, and sustaining attention and concentration for two-hour increments. *Id.* at 70.

As part of her RFC analysis, the ALJ summarized Anthony's testimony regarding his mental impairments and his mental health evaluation and treatment records. (R. 70-71, 72-75). "However, merely summarizing various aspects of the evidentiary record is insufficient; the ALJ was required to connect the dots between the evidence regarding Plaintiff's mental impairments and each specific mental RFC restriction." *Papaleo v. Berryhill*, 2018 WL 5390452, at *5 (N.D. Ill. Oct. 29, 2018). When the ALJ does not connect the dots between a claimant's impairments and the RFC finding, she fails to build the required logical bridge to a conclusion regarding a claimant's disability. *Id.* Other than rejecting all mental health opinions within the record, the ALJ's explanation for her mental RFC is as follows:

> [T]he mental limitations persist despite indications that the claimant's medication regime was helpful and he was generally compliant during the relevant period. The claimant's mental functioning fluctuated, with days worse than others, but there were limited indications of bipolar exacerbations such as significant depressive or manic episodes during this period. He reported some struggle with family and others at time, which supports the limitations to limited contact with the public and coworkers, and the claimant should not engage in team or tandem tasks. The overlapping considerations for fatigue and some medication side effects such as brain fog are considered in the assessment of the unskilled range of work.

(R. 77-78).

Without further explanation from the ALJ as to how the balance of the assessed mental RFC restrictions account for Anthony's bipolar/depression impairment, the Court cannot meaningfully review whether the mental RFC is supported by substantial evidence. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (ALJ "must provide a logical bridge between the evidence and his conclusions.") (internal quotations omitted); SSR 96-8p, 1996 WL 374184, at *7 (the RFC discussion must describe "how the evidence supports *each* conclusion.") (emphasis

5

added). For example, it is unclear how the ALJ determined that a restriction to "sustain[ing] attention and concentration required to sustain these work activities in two-hour increments throughout the typical workday" accounted for Anthony's moderate limitations in concentration, persistence, and pace ("CPP"). Specifically, the ALJ did not explain what evidence in the record supported her conclusion that Anthony could maintain attention and concentration for two hours at a time with the moderate CCP limitations she found in her Listing analysis at step three. After including the "two-hour increments" restriction in her actual RFC finding, the ALJ did not provide further discussion regarding this limitation anywhere in her decision. Moreover, none of the doctors opined that Anthony can sustain the requisite CPP in two-hour segments throughout an entire workday. *Stephanie B. v. Kijakazi*, 2023 WL 2582051, at *6 (S.D. Ind. March 21, 2023) ("no state agency psychological consultants or treating medical providers address a two-hour limitation."). Nor is this limitation supported by Anthony or his mother's statements. The ALJ acknowledged that Anthony reported that he can only pay attention for one hour and that he does not finish what he starts. (R. 69, 291). As the ALJ also noted, Anthony's mother indicated that he can hold his attention for half an hour and does not finish what he starts. *Id*. at 69, 306. In addition, the ALJ provided no explanation for how Anthony's mental functioning fluctuations with some days worse than others, even if there were "limited indications of bipolar exacerbations such as significant depressive or manic episodes," support Anthony's ability to consistently sustain attention and concentration for two-hour intervals over the course of an eight hour workday.

      This Court and other district courts in this circuit have "rejected RFC findings that, by restricting a claimant to two-hour segments of concentration, purport to account for a claimant's moderate CPP limitations where the ALJ failed to explain what evidence in the

record supported that specific restriction." *Radosevich v. Kijakazi*, 2023 WL 2743932, at *4 (E.D. Wis. March 31, 2023); *Jason M. v. Kijakazi*, 2022 WL 2071096, at *8 (S.D. Ind. June 9, 2022) ("The RFC's inclusion of 'regular breaks every two hours' does not, without additional explanation, account for CPP limitations."); *Martha A. v. Kijakazi*, 2021 WL 4691418, at *5 (S.D. Ind. Sept. 21, 2021) (the ALJ "did not build a logical bridge to explain in any detail what evidence led her to the conclusion that Plaintiff had the ability to attend, concentrate, and persist for two hours at a time, up to eight hours in a workday."); *Brian P. v. Saul*, 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) (remanding where the "ALJ did not explain how any evidence in the record translates into a finding that [claimant] can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals."); *Warren v. Colvin*, 2013 WL 1196603, at *4 (N.D. Ill. Mach 22, 2013) ("No physician opined that [claimant] is capable of concentrating a certain number of hours at a time, and the ALJ did not explain what medical records supported her finding of a two-hour attention span."). Thus, it is not clear whether the ALJ's two-hour attention and concentration limitation is properly supported by the record or accounts for Anthony's moderate CPP limitations.[1]

---

[1] Some courts in this circuit have found that a "restriction to two-hour segments of concentration is no limitation at all." *Radosevich*, 2023 WL 2743932, at *4; *see Kristina L. B. v. Kijakazi*, 2022 WL 4376385, at *5 (S.D. Ind. Sept. 22, 2022); *Jason M.*, 2022 WL 2071096, at *8; *Tyrel E. v. Kijakazi*, 2022 WL 1153110, at *6 (S.D. Ind. Apr. 18, 2022); *Amy R. v. Kijakazi*, 2022 WL 796332, at *4 (S.D. Ind. March 15, 2022). Indeed, the vocational expert here testified that a break every two hours is normal, with two 10 to 15 minute breaks and a 30-minute lunch. (R. 130). "It does not seem to make sense to conclude, as the ALJ apparently did here, that an individual with moderate limitations in the ability to maintain attention and concentration would require the same frequency of breaks as a typical worker." *Warren*, 2013 WL 1196603, at *5. The Court notes, however, that the Seventh Circuit has suggested that a two-hour attention and concentration restriction may amount to some CPP limitation. *See Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021) ("even though the vocational expert testified that non-impaired workers can sustain focus for two hours, that point does not help Delong: Non-impaired workers can sustain focus for *at least* two hours, whereas the RFC *limits* Delong's sustained attention to two hours at a time"). In any event, and assuming without deciding that the two-hour attention and concentration segment is a limitation to the normal workday, the ALJ failed to explain or provide any evidentiary support for that determination.

7

As another example, the mental RFC provides that Anthony can work occasionally with the general public and coworkers, with no teamwork or tandem work, but includes no limitation with regard to interactions with supervisors. The ALJ did not explain why Anthony can work appropriately with his supervisors more often than with his coworkers and the general public, and the ALJ did not cite any evidence justifying this distinction. (R. 68-69, 78); *Papaleo*, 2018 WL 5390452, at *5 ("the ALJ did not explain why Plaintiff can respond appropriately to his supervisors and coworkers more often than to the public."). Moreover, the Commissioner's defense of the ALJ's decision fails to explain how the evidence cited by the ALJ supports Anthony tolerating up to constant interaction with supervisors, despite his moderate limitation in interacting with others. Doc. 22 at 11-12.

Still more, the ALJ's reasoning as to how she determined the workplace adaption restriction is not clear. Anthony testified that he does not handle changes in his routines well as changes can lead to stress which triggers his bipolar symptoms and energy level fears. (R. 292). His mother added that Anthony "needs time and patience" to handle changes in routine. *Id*. at 307. Although the mental RFC provides a restriction regarding workplace changes, the ALJ did not explain how the evidence supported her finding that Anthony could perform work with occasional changes or cite any evidence suggesting that an occasional restriction on workplace changes would accommodate his mental impairments. Finally, the ALJ provides only a conclusory statement that the mental RFC limitations are supported by the "various indications of tangential thinking [which are] also fluctuating with more recent records indicating he was less tangential than earlier." (R. 80). However, the ALJ did not explain how or why the specific mental RFC limitations she identified accommodated Anthony's fluctuating tangential thinking.

In addition, other than APN Kimberly Finnegan's opinion addressing time off-task and absenteeism which the ALJ found unpersuasive, the record contained no opinion evidence addressing how limitations in Anthony's mental abilities might translate into specific work-related functions. It is true that an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" when assessing RFC restrictions, *Whitehead v. Saul*, 841 F. Appx. 976, 982 (7th Cir. 2020) (quotation marks omitted). But "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves," *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). And "without at least some reliance on any medical opinions, substantial evidence is lacking from the ALJ's RFC determination." *Joel B., o/b/o Melissa B. v. Kijakazi*, 2022 WL 2589785, at *6 (S.D. Ind. July 7, 2022).

In this case, the state agency psychological consultants determined that Anthony was only mildly limited in the four areas of mental functioning of the "paragraph B" criteria of Listing 12.04. They opined that Anthony's bipolar disorder was non-severe and thus, they did not assess any mental RFC limitations. (R. 138-39, 151-53). But the ALJ rejected these opinions as not persuasive, explaining that a substantial amount of subsequent mental health evidence and Anthony's multiple sclerosis justified greater mental work-related limitations. (R. 78). The ALJ's explicit rejection of these opinions meant that she did not intend for them to provide support for the specific mental RFC findings. *Papaleo*, 2018 WL 5390452, at *5; *see also Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (doctor's "evaluation did not include a *functional* assessment of [claimant's] abilities, nor did she opine about any limitations [claimant's] impairments may have caused, so her report could not be used to support specific limitations included in [claimant's] residual functional capacity.") (emphasis in original). Moreover, the ALJ

9

rejected the opinion of APN Finnegan that Anthony had marked limitations in the paragraph B criteria and would be off task, because symptoms would interfere with the attention and concentration needed to perform even simple work tasks, 21% or more of the workday and absent from work more than three times a month. (R. 79-80, 894-96). Accordingly, **there are no opinions in the record that support the ALJ's specific conclusions in the mental RFC assessment.**

In short, the ALJ did provide some explanation in support of her specific mental RFC findings, citing (1) the fact that Anthony struggled with family and others at times to support social restrictions of limited contact with the public and coworkers with no team or tandem tasks and (2) his fatigue and medication side effects such as brain fog in limiting him to unskilled work. However, the ALJ failed to identify and explain the evidence of record supporting the remainder of her mental RFC conclusions, and the record contains no supporting mental RFC opinion evidence. Under these circumstances, it was particularly important for the ALJ to minimally articulate how the evidence supported *each* of the specific mental RFC limitations she assessed. Without some discussion as to why the ALJ settled on the specific limitations for maintaining attention and concentration for two-hour increments and a routine work environment with no more than occasional changes in the work without any social interaction limitation for supervisors, the Court is unable to trace the ALJ's reasoning and thus, cannot determine whether the ALJ's mental RFC determination is supported by substantial evidence. [2]

---

[2] *See Stephanie B.*, 2023 WL 2582051, at *6 ("the problem here is the ALJ's lack of explanation coupled with the absence of a medical expert opining that [claimant's] moderate CPP limitations were adequately accounted for with a two-hour limitation."); *Tyrel E.*, 2022 WL 1153110, at *5 (concluding the ALJ's "inexplicable finding regarding this two-hour interval figure [was] not based on substantial evidence, since none of Claimant's medical records, nor the State agency psychologists, offered this opinion."); *Amy R.*, 2022 WL 796332, at *3 (remanding because it was unclear how the ALJ "reached the two-hour interval figure since none of [c]laimant's medical records or providers, nor the State agency psychologists, offered this opinion."); *Lashonda M. v. Saul*, 2021 WL 2659596, at *8 (S.D. Ind. June 28, 2021) ("nowhere in the ALJ's decision does he make it clear how he arrived at the two-hour interval figure. No state agency doctor or any other doctor offered this opinion."); *Goodman v. Saul*, 2020 WL 3619938, at *8 (N.D. Ind. June 10, 2020) (remanding where it was "not clear how the ALJ reached the two-hour interval figure. Neither of the two state agency doctors, or seemingly any medical record, offered such an opinion."); *Kelly v. Colvin*, 2015 WL 1930035,

Finally, the Commissioner does not propose a harmless error analysis for the ALJ's failure to properly support the mental RFC restrictions. "An error is harmless only if we are convinced that the ALJ would reach the same result on remand." *Lambert*, 896 F.3d at 776. Regarding CPP, the ALJ's decision to limit Anthony's attention and concentration to two-hour intervals on a regular and continuing basis is important to her analysis because the vocational expert testified that if Anthony were off task 15 percent or more of the workday outside of normal breaks and a lunch, there would be no unskilled, sedentary jobs available. (R. 130-31). Consequently, the ALJ's failure to provide sufficient evidentiary support for the balance of her specific mental RFC restrictions cannot be deemed harmless.

On remand, the ALJ shall build an accurate and logical bridge between the evidence and any conclusions she makes about Anthony's mental RFC. In addition, "if the ALJ again finds that the state agency consultants' opinions are inconsistent with the record—as would be her prerogative under 20 C.F.R. § 404.1520c(a)—she should summon an additional psychological expert to interpret the evidence rather than interpreting it herself." *Alvin v. Kijakazi*, 2023 WL 2499860, *5 (N.D. Ill. March 14, 2023) (citing *Kara v. Kijakazi*, 2022 WL 4245022, at *3 (E.D. Wis. Sept. 15, 2022) ("[W]hen [an ALJ's rejection of medical opinions] results in a complete absence of valid expert opinions, the ALJ should summon a medical expert who can review the record and offer an opinion grounded in the evidence."); *Jennifer B. v. Saul*, 2020 WL 2520996, at *8 (N.D. Ind. May 18, 2020) (same)); *see also Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (severe depression "is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.").

---

at *6 (S.D. Ill. Apr. 28, 2015) ("[T]he RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time.").

11

Given the foregoing analysis, the Court declines to address Anthony's additional challenges to the ALJ's decision. However, Anthony shall raise his arguments regarding any other alleged errors by the ALJ on remand. *See* 20 C.F.R. § 404.983(a) (on remand, "any issues relating to the claim(s) may be considered by the Appeals Council or administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in the case.").

### III. CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's request for reversal and remand [16] is granted in part and the Commissioner's motion for summary judgment [21] is denied. The decision of the Commissioner is reversed, and this case is remanded for further proceedings consistent with this Memorandum Opinion.

**SO ORDERED.**

Dated: September 28, 2023

Sunil R. Harjani
United States Magistrate Judge